UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | | |
|---|---|---|
| RAPTOR TRADING SYSTEMS, INC., | : | No. 16-cv-3430-RA-DCF |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID BETH and MICHAEL WALLACH, | : | |
| | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | | |
|---|---|---|
| MICHAEL WALLACH and DAVID BETH, | : | No. 16-cv-5392-RA-DCF |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| THEODOROS LARDOS, MARK HINMAN, | : | |
| NELSON IGNACIO, and ALEJANDRO GIL, | : | |
| | : | |
| Defendants | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


**MICHAEL WALLACH AND DAVID BETH'S OBJECTIONS TO
MAGISTRATE JUDGE FREEMAN'S APRIL 6, 2018 DISCOVERY ORDER**


O'Hare Parnagian LLP
82 Wall Street, Suite 300
New York, NY 10005
(212) 425-1401

*Attorneys for Michael
Wallach and David Beth*

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ............................................................ 4

      A.     The Call Price Dispute ........................................................................ 4

      B.     The Communications with the Potential Third-Party Purchaser ............................ 5

      C.     The Parties' Discovery Dispute and Magistrate Judge Freeman's Order ............... 7

ARGUMENT ..................................................................................................................... 10

I.       STANDARD OF REVIEW ...................................................................................... 10

II.      THE ORDER ERRONEOUSLY FAILED TO ORDER PRODUCTION OF
       ALL DOCUMENTS COVERED BY THE RAPTOR PARTIES' SUBJECT
       MATTER WAIVER OF THE ATTORNEY-CLIENT PRIVILEGE AND
       THE WORK PRODUCT DOCTRINE ................................................................. 10

III.     THE ORDER ERRONEOUSLY FAILED TO ORDER
       PRODUCTION OF COMMUNICATIONS WITH THE
       POTENTIAL THIRD-PARTY PURCHASER OF RAPTOR ........................................ 13

      A.     The Raptor Parties' Subject Matter Waiver Extends to the
           Communications with the Potential Third-Party Purchaser ................................ 13

      B.     The Communications at Issue Are Not Entitled to
           Work Product Protection ................................................................ 14

      C.     Even If the Communications Are Work Product, Wallach and Beth
           Are Entitled to Production of Those Portions of Them Containing
           Purely Factual Material ................................................................ 15

CONCLUSION .................................................................................................................. 17

## **TABLE OF AUTHORITIES**

Page(s)

### **Cases**

Astra Aktiebolag v. Andrx Pharm., Inc.,
  208 F.R.D. 92 (S.D.N.Y. 2002) ................................................................. 16-17

Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.,
  No. 93 Civ. 6876 (KMW) (JCF), 1995 WL 598971 (S.D.N.Y. Oct. 11, 1995) ...............12

Fed. Trade Comm'n v. Boehringer Ingelheim Pharm., Inc.,
  778 F.3d 142 (D.C. Cir. 2015) .........................................................15

Hickman v. Taylor,
  329 U.S. 495 (1947)................................................................. 15-16

In re Grand Jury Subpoenas Dated March 9, 2001,
  179 F. Supp. 2d 270 (S.D.N.Y. 2001)...............................................15

Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp., N.V.,
  No. 94 Civ. 4725(CSH)(SEG), 1997 WL 272405 (S.D.N.Y. May 21, 1997) ............ 11-12

MacWade v. Kelly,
  230 F.R.D. 379 (S.D.N.Y. 2005) .....................................................10

Rattner v. Netburn,
  No. 88 Civ. 2080 (GLG), 1989 WL 223059 (S.D.N.Y. June 20, 1989)
  aff'd, 1989 WL 231310 (S.D.N.Y. Aug. 23, 1989) ..........................................14

Retail Brand Alliance, Inc. v. Factory Mut. Ins. Co.,
  No. 05 Civ. 1031 (RJH)(HBP), 2008 WL 622810 (S.D.N.Y. Mar. 7, 2008) .............14, 15

Robbins & Myers, Inc. v. J.M. Huber Corp.,
  274 F.R.D. 63 (W.D.N.Y. 2011)......................................................11

Starr Indem. & Liab. Co. v. Am. Claims Mgmt., Inc.,
  No. 13 Civ. 742 (DLC), 2014 WL 1378127 (S.D.N.Y. Apr. 8, 2014) .............................14

United States v. Matias,
  885 F. Supp. 2d 458 (D. Mass. 2012) ........................................................10, 17

Xerox Corp. v. Int'l Bus. Machines Corp.,
  64 F.R.D. 367 (S.D.N.Y. 1974) ...............................................16

### **Statutes and Rules**

Fed. R. Civ. P. 26....................................................................15

ii

Fed. R. Civ. P. 72 ....................................................................................................................10

Fed. R. Evid. 408 ....................................................................................................................7

Fed. R. Evid. 502 .................................................................................... 10-11, 13, 14

## **<u>Other Authorities</u>**

Fed. R. Evid. 502 advisory committee's note ............................................................11

Michael Wallach and David Beth respectfully submit the following objections to the April 6, 2018 discovery order (the "Order") issued by the Honorable Debra Freeman in both of the above-referenced actions.[1]

## PRELIMINARY STATEMENT

The Order – without providing any analysis or reasoning – granted in party and denied in part Wallach and Beth's motion seeking production of documents that Raptor Trading Systems, Inc. ("Raptor"), Theodoros Lardos, Mark Hinman, Nelson Ignacio, and Alejandro Gil (collectively, the "Raptor Parties") had withheld on attorney-client privilege or work product grounds.

Wallach and Beth object to the Order because (a) while Magistrate Judge Freeman evidently agreed with Wallach and Beth's positon that there has been a subject matter waiver of the attorney-client privilege and the work product doctrine that was not (as the Raptor Parties had argued) temporally limited, the Order did not direct the Raptor Parties to produce all documents subject to the waiver, and (b) the Order erroneously permitted the Raptor Parties to withhold as work product certain communications between counsel for the Raptor Parties and counsel for a potential third-party purchaser of Raptor.

This dispute is a classic example of the type of gamesmanship that the subject matter waiver doctrine is intended to prevent. Based on the facts and circumstances of this case, Magistrate Judge Freeman's decision not to order production of all of the documents at issue was clearly erroneous. At the very least, the lack of any reasoning in the Order necessitates an *in*

---

[1] The Order appears at ECF docket no. 68 in the Raptor Trading Systems, Inc. v. Beth action and ECF docket no. 62 in the Wallach v. Lardos action. On April 19, 2018, the Court granted Wallach and Beth's request for an extension to May 4, 2018 of their time to object to the Order.

*camera* review by this Court to determine whether the documents still at issue were properly withheld.

This litigation arises from the Raptor Parties' brazen attempt to take advantage of a scrivener's error to deprive Wallach and Beth of millions of dollars to which they were entitled in connection with Raptor's purchase of OMEX Systems, Inc. from Wallach and Beth, and to thereby enable Lardos, Hinman, and Ignacio to reap a multi-million dollar windfall.

Specifically, the Raptor Parties claim that Raptor is entitled to purchase Raptor stock owned by Wallach and Beth for one-fourth of the agreed-upon price (and in the process to deprive Wallach and Beth of other significant compensation to which they are entitled). The Raptor Parties intended to eliminate Wallach and Beth from Raptor at an artificially cheap price prior to a planned sale of Raptor in order to proportionally increase the ownership share of – and thus the payout or other compensation to – Lardos, Hinman, and Ignacio. Ultimately, the Raptor Parties' conduct scuttled the planned sale of Raptor, to Wallach and Beth's detriment.

The most important issue in this litigation is the definition of the "Call Price" at which Raptor was entitled to purchase Wallach and Beth's Raptor stock. The dispute centers on the reason why certain language was omitted from the definition of Call Price in the parties' Put/Call Agreement, leading to the Raptor Parties' position that the purported Call Price is 75% less than the Call Price the parties actually agreed upon. Wallach and Beth maintain that the omission was an inadvertent scrivener's error that does not reflect the parties' agreement, while the Raptor Parties maintain that the change was intentional. There are no contemporaneous documents or communications concerning the Raptor Parties' alleged decision to reduce the Call Price by 75% in the final (and only) version of the Put/Call Agreement, and the Raptor Parties have given

uncorroborated, contradictory, and self-serving deposition testimony regarding the purported decision.

In discovery, the Raptor Parties engaged in selective disclosure of attorney-client communications that they believed were favorable to their case.  The Order, while requiring the production of certain documents, declined to order production of a whole swath of others on the same subject matter, thereby allowing the Raptor Parties to continue to hide the ball.  The law is clear, however, that the Raptor Parties may not use a claim of privilege or work product to prevent disclosure of factual information regarding the parties' claims and defenses, even if those facts were communicated to or from an attorney.

Among the documents covered by the subject matter waiver that the Order nonetheless allowed to remain withheld are communications between the Raptor Parties' counsel and counsel for the potential purchaser of Raptor, which the Raptor Parties claim is attorney work product. These documents should have been ordered produced based on the subject matter waiver, and also because they appear to contain factual information about the transactions at issue, the communication of which is not work product.  Even assuming arguendo that the communications are work product, they should be produced because Wallach and Beth have shown that they have a substantial need for the information and cannot obtain its substantial equivalent without undue hardship.  Indeed, these communications may be the only way for Wallach and Beth to obtain information to challenge the Raptor Parties' dubious deposition testimony.

Accordingly, Magistrate Judge Freeman should have ordered production of all of the documents in question, and her failure to do so was clearly erroneous.

## FACTUAL AND PROCEDURAL BACKGROUND

In late 2014, the Raptor Parties and Wallach and Beth entered into negotiations for the sale of Wallach and Beth's company OMEX Systems, LLC (later OMEX Systems, Inc.) to Raptor. The parties signed a heavily negotiated term sheet in December 2014 (the "Term Sheet"), and finalized the terms of the transaction on February 17, 2015 in a series of written contractual agreements. The claims and counterclaims in both of these actions arise from the Raptor/OMEX transaction and several of those agreements. Only those claims and facts relevant to the current discovery dispute will be discussed here.

### A.      The Call Price Dispute

As part of the Raptor/OMEX transaction, Wallach and Beth received shares of non-voting Class D common stock in Raptor with economic rights equal to eight percent of the other common stock in Raptor (the "Raptor Shares"). Pursuant to a Put/Call Agreement, the parties agreed that Raptor would have a Call Option, which granted Raptor the right to regain the Raptor Shares at any time after February 17, 2015 by sending Wallach and Beth a Call Notice and paying the Call Price.

The key issue in this case is the definition of the Call Price. Wallach and Beth maintain that the agreed-upon Call Price, as reflected in the Term Sheet, is eight percent of four times the gross revenues of Raptor in the year immediately prior to the Call Date. The words "four times," however, were omitted from the Put/Call Agreement, which defines the Call Price as "eight percent (8%) of the gross revenues of Raptor in the year immediately prior to the Call Date."

Wallach and Beth maintain that the omission of "four times" in the Put/Call Agreement was an inadvertent scrivener's error that does not reflect the parties' agreement, as the Raptor Parties claim. The Raptor Parties have produced no evidence to the contrary.

4

The Raptor Parties concede that there are no documents or communications in which the change was discussed prior to the execution of the final (and only) version of the Put/Call Agreement – i.e., there were no drafts exchanged.  At their depositions, Lardos and Gil gave inconsistent testimony about how the change came about (in testimony concerning attorney-client communications for which the privilege has now been waived).  See Gil Tr. (Ex. A) at 97-98, 110-11, 116-18; Lardos Tr. (Ex. B) at 100-02, 110-11, 140-41.[2]  Hinman testified that he had no knowledge of how the change came about, and Ignacio testified that he was unaware that it had come about at all.

In March 2016, Raptor sent Wallach and Beth a purported Call Notice and a subsequent wire transfer of $1,088,608.96.  Wallach and Beth declined to deliver the Raptor Shares to Raptor because they maintain that the Call Price is not $1,088,608.96, but rather $4,354,435.84.  Raptor subsequently commenced this litigation seeking a declaration that it had properly exercised the Call Option.  Wallach and Beth have, inter alia, asserted a counterclaim for reformation of the Put/Call Agreement to accurately reflect the parties' actual agreement as to the Call Price.

**B.    The Communications with the Potential Third-Party Purchaser**

Prior to their purported exercise of the Call Option, the Raptor Parties began negotiating with a third party for the sale of Raptor.  Wallach and Beth maintain that the purported exercise of the Call Option at one-fourth of its true value was an attempt by Lardos, Hinman, and Ignacio to remove Wallach and Beth from Raptor at an artificially low price – lower than Wallach and

---

[2] "Ex." refers to exhibits to the accompanying Declaration of Robert A. O'Hare Jr.  The exhibits contain information that the Raptor Parties have designated as confidential under the Protective Order in these actions.  As discussed with Chambers on May 2, 2018, Wallach and Beth are not e-filing the exhibits at this time.  The exhibits are being submitted to Chambers via email and in hard copy, and to the Raptor Parties' counsel via email, to afford the Raptor Parties the opportunity to seek redaction or filing under seal of any information they deem confidential, pursuant to Rule 5.A. of the Court's Individual Rules & Practices in Civil Cases.

Beth would have received from the sale – and thereby increase the payout to Lardos, Hinman, and Ignacio.

Unfortunately, the Raptor Parties' greed caused the planned sale, which had been imminent, to collapse.  Just a few weeks after representing in writing to the potential purchaser that there was "there is no material litigation" relating to Raptor "which would affect the transfer or value" of Raptor, they caused Raptor to commence a lawsuit against Wallach and Beth seeking to enforce the purported exercise of the Call Option.  As a result of the litigation commenced by the Raptor Parties, the potential purchaser withdrew from the deal.  Wallach and Beth have asserted, inter alia, claims against Lardos, Hinman, and Ignacio for breach of fiduciary duty for acting to exclude Wallach and Beth from the sale and for causing the sale to collapse.

The Raptor Parties' counsel was in email communication with counsel for the potential purchaser during this time.  The Raptor Parties assert that many of these emails protected by the work product doctrine.  These communications appear to relate factual information about the Raptor/OMEX transaction, including the Put/Call Agreement.  For example, in document RTS00006851 (Ex. C; entry 134 on the Raptor Parties' privilege log), the attorney for the potential third-party purchaser asks the Raptor Parties' counsel, "[d]oes this mean that there was no back and forth on the Put/Call Agreement and they accepted that agreement as it was sent to them?"  The Raptor Parties have redacted the response on work product grounds.  Similarly, in document RTS00006835 (Ex. D; entry 132 on the Raptor Parties' privilege log), the Raptor Parties have redacted their counsel's apparent response to an inquiry "concerning the timing of the exercise of the P/C."  The Order allowed those documents to remain redacted.

**C.**    **The Parties' Discovery Dispute and Magistrate Judge Freeman's Order**

In September and October, 2017, the parties submitted letter briefs to Magistrate Judge Freeman on two issues:

1)     whether a subject-matter waiver of the attorney-client privilege and the work product doctrine resulted from the Raptor Parties' production of documents constituting, and testimony regarding, attorney-client communications made during the negotiation of the Raptor/OMEX transaction, and whether any such waiver extends to communications made after certain disputed events taking place in March, 2016;[3] and

2)     whether the Raptor Parties should be required to produce certain documents they disclosed to the potential third-party purchaser of Raptor, which the Raptor Parties have identified as attorney work product.[4]

As to the first issue, in the course of the parties' attempts to resolve these issues prior to briefing them before Magistrate Judge Freeman, the Raptor Parties effectively conceded that there had been a subject-matter waiver of both the attorney-client privilege and the work product doctrine concerning the Raptor/OMEX transaction, and, as a result, produced documents that they had initially withheld on grounds of attorney-client privilege, the work product doctrine, or both.[5] The Raptor Parties only contested the temporal scope of the waiver, arguing that it ended

---

[3] Before Magistrate Judge Freeman, the Raptor Parties erroneously asserted that Wallach and Beth had taken the position that the subject matter waiver related only to the Call Price. Wallach and Beth have always maintained that the subject matter waiver extends to the full Raptor/OMEX transaction, as set forth, inter alia, in the parties May 5, 2017 joint letter to the Court, at page 5, which set forth Wallach and Beth's position that "Raptor intentionally disclosed multiple privileged communications concerning the negotiation of and drafting of documents for the Raptor/OMEX merger." The Raptor Parties also tried to imply before Magistrate Judge Freeman that they produced the documents in question in the context of settlement discussions. In reality, the Raptor Parties have never claimed that any documents they produced prior to the mediation before Magistrate Judge Freeman were produced solely for settlement purposes or was subject to the protections of Fed. R. Evid. 408. Rather, the documents were simply bates numbered and made a part of the Raptor Parties' overall production. Moreover, the Raptor Parties produced most of the documents in question after the mediation, and the deposition testimony concerning attorney-client communications also took place after the mediation.

[4] These documents are set forth in items 126, 132-35, 140, 140-1 (apparently an attachment to 140), 141-1, 141-2, 152, 161-167, 168-1, 173-1, and 176 of the Raptor Parties' privilege log. (Ex. E).

[5] On the Raptor Parties' initial privilege log, see Ex. F (highlighted excerpt), they claimed (a) both attorney-client and work product protection for entries 1-9, 11-23 (including sub-entries), 28, 30, and 54; (b) work product protection for entries 24-27 and 29; and (c) attorney-client privilege for entries 56-63. The Raptor Parties *(cont'd)*

on March 22, 2016, when Wallach and Beth rejected Raptor's purported exercise of the Call

Option.  Wallach and Beth maintained that there was no such temporal limitation to the waiver.

Based on the parties' submissions, Magistrate Judge Freeman conducted an *in camera*

review of the disputed documents, and subsequently issued the Order, which provides as follows:

> This Court having reviewed the documents submitted for in camera review, the
> following (as tabbed in Raptor's submission) should be produced:  Document nos.
> 65-68, 70-75, 78-79, 93, 103, 110-116, 124, 151, 174, and 210-214.  In addition,
> the following documents should be produced in redacted form:  69 (content of
> email dated 3/28/16 at 1:35 pm may be redacted), 80 (content of emails dated
> 5/6/16 at 3:41 and 4:30 pm may be redacted), 144 (contents of emails previously
> redacted may remain redacted, but headers -- i.e., from, sent, to, and subject lines
> -- should be disclosed), 181-182, and 185 (2nd through 4th paragraphs of email
> dated 9/21/16 at 7:24 pm may be redacted), and 206 and 207 (content, but not
> headers, of emails dated 10/13/16 at 5:53 pm and 10/14/16 at 2:51, 4:16, 4:06, and
> 4:08 pm may be redacted.  This Court finds that the remaining documents
> submitted were properly withheld or redacted.  Raptor is directed to produce
> documents in accordance with the above within two days of the date of this Order.
> Raptor is further directed to re-review the remainder of any privilege challenges
> that have been asserted and, using this Order as a guide, supplement its
> production as appropriate, within two weeks of the date of this Order.

The Order does not explain the reasons why the various document were or were not

required to be produced.  However, it appears, based on the documents that Magistrate Judge

Freeman ordered to be produced, that she (a) accepted Wallach and Beth's position that there

was had been a subject matter waiver without any temporal limitation, but did not order

production of all documents subject to the waiver, and (b) rejected Wallach and Beth's argument

that the communications with counsel for the potential third-party purchaser should be produced.

---

subsequently produced all of these documents, as reflected on its revised privilege log (Ex. E).  Wallach and Beth do
not claim that the Raptor Parties' subsequent production of these documents constitutes a separate waiver of the
attorney-client privilege or of work product protection.  Rather, the waiver occurred during their earlier document
productions and depositions, thus necessitating the subsequent production.

On April 9, 2018, the Raptor Parties produced the documents set forth in the Order.  On April 20, 2018, the Raptor Parties produced additional documents consistent with the Order, as directed by Magistrate Judge Freeman.

For the Court's reference, the accompanying copy of the Raptor Parties' privilege log (Ex. E) has been highlighted to reflect the results of the Order, as follows:

- Green indicates documents that the Order directed the Raptor Parties to produce in full.

- Orange indicates documents that the Order directed the Raptor Parties to produce in redacted form.

- Yellow indicates additional documents subsequently produced in full by the Raptor Parties pursuant to the Order.

- Blue indicates additional documents subsequently produced in redacted form by the Raptor Parties pursuant to the Order.[6]

The documents that were produced in full as a result of the Order (green and yellow categories) include documents that the Raptor Parties had claimed were protected by the attorney-client privilege, the work product doctrine, or both.  They also include documents and communications regarding the Raptor Parties' pre-litigation dispute with Wallach and Beth, their litigation with Wallach and Beth, and the potential third-party purchaser of Raptor.  All of the documents that Magistrate Judge Freeman ordered to be produced in full (green category) are dated on or after the March 22, 2016 cutoff that the Raptor Parties had argued for.[7]  Several of them include communications with the Raptor Parties' litigation counsel.

---

[6] The Order directed the production of document no. 151, but that document does not appear on the Raptor Parties' privilege log.  The Order also directed the production of document no. 144 in redacted form, which Wallach and Beth presume refers to document 144-1.

[7] Entry 113 on the privilege log is an email chain beginning before March 22, 2016 and ending after that date.

9

## ARGUMENT

## I.

## STANDARD OF REVIEW

Rule 72(a) provides that this Court "must consider timely objections [to a magistrate judge's order on a nondispositive matter] and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  A ruling is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  MacWade v. Kelly, 230 F.R.D. 379, 381 (S.D.N.Y. 2005) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).

However, even under the clearly erroneous standard, "a district judge is 'entitled to discount' a magistrate's conclusions where its opinion omits essential findings or analysis." United States v. Matias, 885 F. Supp. 2d 458, 464 (D. Mass. 2012) (quoting Quaker State Oil Refining Corp. v. Garrity Oil Co., 884 F.2d 1510, 1517 n.5 (1st Cir.1989)).

## II.

## THE ORDER ERRONEOUSLY FAILED TO ORDER PRODUCTION OF ALL DOCUMENTS COVERED BY THE RAPTOR PARTIES' SUBJECT MATTER WAIVER OF THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE

As noted above, it appears that Magistrate Judge Freeman ruled, correctly, that there was a subject matter waiver and that it was not temporally limited, but declined to order production of all documents subject to the waiver.  The determination not to order production of all documents covered by the subject-matter waiver was clearly erroneous.

Federal Rule of Evidence 502(a) provides that once a "disclosure is made in a federal proceeding . . . and waives the attorney-client privilege or work-product protection," the

privilege or work product protection is also waived for undisclosed communications that

"concern the same subject matter" and "ought in fairness to be considered together."  This is

intended "to prevent a selective and misleading presentation of evidence to the disadvantage of

the adversary."  Fed. R. Evid. 502 advisory committee's note; see also Robbins & Myers, Inc. v.

J.M. Huber Corp., 274 F.R.D. 63, 94 (W.D.N.Y. 2011) ("Subject-matter waiver applies where

considerations of fairness should allow the 'attacking party to reach all privileged conversations

regarding a particular subject once one privileged conversation on that topic has been disclosed'

in order to avoid prejudice to the adversary party and 'distortion of the judicial process' that may

result from selective disclosure.") (citation omitted) (quoting In re von Bulow, 828 F.2d 94, 101,

102-03 (2d Cir. 1987)).

　　　　Here, as noted above, the Raptor Parties effectively acknowledged that there had been a

waiver of both the attorney-client privilege and the work product doctrine – and as a result of

that waiver produced additional documents for which they had initially claimed both attorney-

client privilege and work product protection.  Moreover, Magistrate Judge Freeman apparently

correctly rejected the Raptor Parties' argument that the waiver ended on March 22, 2016, when

Wallach and Beth rejected Raptor's purported exercise of the "Call Option," because it

purportedly represents the date the Raptor Parties went into "litigation mode."  See Kidder,

Peabody & Co. v. IAG Int'l Acceptance Grp., N.V., No. 94 Civ. 4725(CSH)(SEG), 1997 WL

272405, at *5 (S.D.N.Y. May 21, 1997) ("[o]nce [a] waiver is created, parties may not limit the

waiver temporally.") (brackets in original) (quoting Bank Brussels Lambert v. Credit Lyonnais

(Suisse) S.A., No. 93 Civ. 6876 (KMW) (JCF), 1995 WL 598971, at *3 (S.D.N.Y. Oct. 11, 1995)).[8]

Despite evidently finding a subject matter waiver, however, the Order nonetheless allowed the Raptor Parties to withhold or redact documents on the same subject matter, for no apparent reason.

For example, while Magistrate Judge Freeman ordered the production in full of multiple emails concerning the "Wallach and Beth litigation," see privilege log entries 103, 110-116, 174, 210-214, she declined to order production of a host of others on the same subject, including but not limited to the communications between the Raptor Parties' counsel and counsel for the potential purchaser. The redacted documents tell a similar story. For example, the Order permitted redaction of a portion of document RTS00010468 (Ex. G; entry 69 on the Raptor Parties' privilege log) from Hinman to Gil, Lardos, and Ignacio regarding "Omex/WB/Raptor" but required production of Gil's response, for no apparent reason.

And while a number of descriptions of documents on the privilege log are somewhat cryptic, there are undoubtedly numerous other examples of documents covered by the subject matter waiver that the Order did not require to be produced.

---

[8] The Kidder court explained that "[t]he relevant question with respect to documents prepared or communications occurring after [the date in question] is not the *date* thereof, but whether or not that document or communication contains information that is *relevant* to the actions [plaintiff] took prior thereto." Kidder, 1997 WL 272405, at *5 (emphasis in original). Thus, if a withheld communication contains a discussion of how the definition of Call Price came to be altered in the Put/Call Agreement, or perhaps even an admission by the Raptor Parties that the change was inadvertent (as Wallach and Beth claim) rather than intentional (as the Raptor Parties maintain), then the Raptor Parties cannot use a claim of privilege or work product to hide that information and thereby thwart Wallach and Beth's ability to determine the truth. See id. ("a document prepared today which recounts factual information as to legal advice received by [plaintiff] in the course of preparing its application for the attachment may well be relevant" and thus subject to the waiver); Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., No. 93 Civ. 6876 (KMW) (JCF), 1995 WL 598971, at *6 (S.D.N.Y. Oct. 11, 1995) (applying subject matter waiver when "later communications could alter th[e] picture" being painted by the defendant and production of disputed documents would enable the plaintiffs to "verify or challenge" defendant's position and to avoid "a one-sided account and prejudic[ing] the plaintiffs' ability to litigate their claim").

Because the Order did not provide any rationale for ordering production of some, but not all, of the documents in question, the Court should not simply accept Magistrate Judge Freeman's determination in this regard.  Nor may the Court merely take the Raptor Parties' word for it that any of the documents concern purely litigation strategy (which Wallach and Beth do not seek), as opposed to factual information for which the privilege has been waived.  Under these circumstances, Wallach and Beth respectfully ask the Court to conduct an *in camera* review of the documents in question to determine which documents or portions of documents fall within the Raptor Parties' subject matter waiver.

### III.

### THE ORDER ERRONEOUSLY FAILED TO ORDER PRODUCTION OF COMMUNICATIONS WITH THE POTENTIAL THIRD-PARTY PURCHASER OF RAPTOR

Magistrate Judge Freeman's decided, without explanation, not to order production of the communications between the Raptor Parties' counsel and counsel for the potential third-party-purchaser of Raptor.  The Raptor Parties assert work product protection for all of these documents.  This aspect of the Order is clearly erroneous for multiple independent reasons.

**A.**     **The Raptor Parties' Subject Matter Waiver Extends to the Communications with the Potential Third-Party Purchaser**

As set forth above, the Raptor Parties have waived their work product protection, in addition to their attorney-client privilege, for documents on the subject of the Raptor/OMEX transaction.  See Fed. R. Evid. 502(a) (subject matter waiver applies to work product doctrine).

As noted above, the Order directed production of documents that the Raptor Parties had withheld as work product.  And, as also set forth above, before this issue was briefed before Magistrate Judge Freeman, the Raptor Parties produced documents they had previously withheld as work product, as a result of the subject matter waiver.  There can thus be no doubt that the

13

subject matter waiver applies to the Raptor Parties' assertions of work product as well as their invocation of the attorney-client privilege.

Moreover, redacted documents produced by the Raptor Parties demonstrate that they are engaging in precisely the type of selective disclosure that Rule 502(a) is intended to protect. As set forth above, the Raptor Parties have redacted the answer to the question "[d]oes this mean that there was no back and forth on the Put/Call Agreement and they accepted that agreement as it was sent to them?" See Ex. C (RTS00006851, privilege log item 134). They have also redacted their counsel's apparent response to an inquiry "concerning the timing of the exercise of the P/C." See Ex. D (RTS00006835, privilege log item 132). The answers to these questions are clearly within the subject matter waiver, yet the Order allowed them to remain redacted.

**B.     The Communications at Issue Are Not Entitled to Work Product Protection**

The Raptor Parties, as the parties claiming work-product protection, bear the "heavy burden" of establishing that it is warranted. See Starr Indem. & Liab. Co. v. Am. Claims Mgmt., Inc., No. 13 Civ. 742 (DLC), 2014 WL 1378127, at *1 (S.D.N.Y. Apr. 8, 2014). The work product doctrine "does not extend to every written document generated by an attorney; it does not shield from disclosure everything that a lawyer does." Rattner v. Netburn, No. 88 Civ. 2080 (GLG), 1989 WL 223059, at *6 (S.D.N.Y. June 20, 1989), aff'd, 1989 WL 231310 (S.D.N.Y. Aug. 23, 1989).

Here, at a minimum, documents or portions of documents in which the Raptor Parties' counsel simply relates to the third-party purchaser's counsel the historical facts of what happened are not protected by the work product doctrine. See Retail Brand Alliance, Inc. v. Factory Mut. Ins. Co., No. 05 Civ. 1031 (RJH)(HBP), 2008 WL 622810, at *4 (S.D.N.Y. Mar. 7, 2008) (portion of document that "merely list[ed] historical facts concerning this litigation and plaintiff's dispute with defendant" was not work product).

For example, the answer to the question posed in RTS00006851 (Ex. C), "[d]oes this mean that there was no back and forth on the Put/Call Agreement and they accepted that agreement as it was sent to them?" is indisputably factual, yet the Order allowed the Raptor Parties to continue to withhold it.  This was clearly erroneous.

The Raptor Parties have conceded that there is no common interest privilege between the Raptor Parties and the third-party potential purchaser.  Thus, had the third-party purchaser's counsel spoken to the Raptor Parties' counsel on the phone and asked "what happened," the Raptor Parties' counsel's response would not be protected by the work product doctrine.  <u>See Retail Brand Alliance</u>, 2008 WL 622810, at *3 (work product protection applies to documents and tangible things); <u>In re Grand Jury Subpoenas Dated March 9, 2001</u>, 179 F. Supp. 2d 270, 291 (S.D.N.Y. 2001) ("Conversations between lawyers where one lawyer is merely relaying factual information, such as a conversation with a third party, to another lawyer are not privileged (or protected by the work product doctrine).").  The Raptor Parties cannot turn this discoverable information into work product simply by including it in an email from its counsel to a non-party's counsel.  <u>See</u> <u>Fed. Trade Comm'n v. Boehringer Ingelheim Pharm., Inc.</u>, 778 F.3d 142, 152 (D.C. Cir. 2015) ("the mere fact that an attorney had chosen to write a fact down was not sufficient to convert that fact into opinion work product").

## C.   Even If the Communications Are Work Product, Wallach and Beth Are Entitled to Production of Those Portions of Them Containing Purely Factual Material

Even if the Court determines that the communications in question are work product, Wallach and Beth are still entitled to production of, at a minimum, the portions containing purely factual material because Wallach and Beth have a substantial need for the information and cannot obtain its substantial equivalent without undue hardship.  <u>See</u> Fed. R. Civ. P. 26(b)(3)(A)(ii); <u>see also</u> <u>Hickman v. Taylor</u>, 329 U.S. 495, 511 (1947) ("Where relevant and

non-privileged facts remain hidden in an attorney's file and where production of those facts is

essential to the preparation of one's case, discovery may properly be had.").

As set forth above, there are no contemporaneous documents or communications

concerning the Raptor Parties' alleged decision to reduce the Call Price by 75% in the final (and

only) version of the Put/Call Agreement, and their witnesses have given inconsistent and dubious

testimony regarding the purported decision to do so.  To the extent that the communications with

the third-party potential purchaser set forth what actually happened, they are the only way for

Wallach and Beth to discover the truth.  This is a sufficient showing to permit discovery and to

prevent the Raptor Parties from using the work product doctrine to hide that truth:

> It is therefore apparent that the basic thrust of *Hickman* and its progeny is that
> documents containing the work product of attorneys which contain the attorneys'
> thoughts, impressions, views, strategy, conclusions, and other similar information
> produced by the attorney in anticipation of litigation are to be protected when
> feasible, but not at the expense of hiding the non-privileged facts from adversaries
> or the court.  Both sides of a suit need to know the facts in order to properly
> present their case to a court; and the court needs to know the facts in order to
> make a sound and intelligent decision.  Thus, the right of privacy of an attorney's
> notes must be balanced against the critical need for the facts.  Where the non-
> privileged facts are intertwined with information which conceivably is privileged,
> the critical factor becomes the availability of the non-privileged facts from other
> sources; and where no other sources exist, then a balance must be struck in favor
> of distilling, if possible, the non-privileged facts from the attorney's documents.
> If such a distillation becomes impossible, however, then the entire contents of the
> documents must be produced.  This is especially true where one party has control
> over the information sought.  A party should not be allowed to conceal critical,
> non-privileged, discoverable information, which is uniquely within the knowledge
> of the party and which is not obtainable from any other source, simply by
> imparting the information to its attorney and then attempting to hide behind the
> work product doctrine after the party fails to remember the information.

Xerox Corp. v. Int'l Bus. Machines Corp., 64 F.R.D. 367, 381-82 (S.D.N.Y. 1974) (emphasis

added); see also Astra Aktiebolag v. Andrx Pharm., Inc., 208 F.R.D. 92, 107 (S.D.N.Y. 2002)

(quoting Xerox and ordering production of redacted letter from outside counsel to in-house

counsel to permit discovery of "extremely relevant" information that could not be obtained through depositions).

Here, similarly, the absence of any contemporaneous documentary support for the Raptor Parties' claim about the Call Price means that there is no other way for Wallach and Beth to obtain information to challenge the uncorroborated and contradictory deposition testimony of Lardos and Gil, which more than satisfies the substantial need and undue hardship tests.

The Order provides no basis for Magistrate Judge Freeman's refusal to order production of the Raptor Parties' counsel's communication with counsel for the potential third-party plaintiff, and this Court is thus "entitled to discount" it. Matias, 885 F. Supp. 2d at 464. Nor may the Court simply accept an assertion by the Raptor Parties that the documents are protected work product. Accordingly, Wallach and Beth respectfully request that the Court conduct an *in camera* review of the documents listed previously (in footnote 4, *supra*) to determine whether they or any portions of them are not entitled to work product protection.

## CONCLUSION

For the foregoing reasons, Wallach and Beth respectfully request that the Court set aside those portions of the Order that denied Wallach and Beth's motion for production of the documents in question, and either order production of those documents of conduct an *in camera* inspection of the documents in question to determine which additional documents should be produced.

Dated:   New York, New York
         May 4, 2018

                                        *s/Robert A. O'Hare Jr.*
                                        Robert A. O'Hare Jr.
                                        Andrew C. Levitt
                                        O'HARE PARNAGIAN LLP
                                        82 Wall Street, Suite 300
                                        New York, NY 10005
                                        (212) 425-1401
                                        rohare@ohareparnagian.com
                                        alevitt@ohareparnagian.com

                                        *Attorneys for Michael Wallach and David Beth*