Jeffrey E. Glen
Raymond A. Mascia Jr.
Ethan W. Middlebrooks
ANDERSON KILL P.C.
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 278-1000
Facsimile: (212) 278-1733

*Attorneys for Raptor Trading Systems, Inc., Theodoros Lardos, Mark Hinman, Nelson Ignacio, and Alejandro Gil*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAPTOR TRADING SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> DAVID BETH and MICHAEL WALLACH, <br><br> Defendants. | No. 16-CV-3430 (RA-DCF) |
| MICHAEL WALLACH and DAVID BETH, <br><br> Plaintiffs, <br><br> v. <br><br> THEODOROS LARDOS, MARK HINMAN, NELSON IGNACIO, and ALEJANDRO GIL, <br><br> Defendants. | No. 16-CV-5392 (RA-DCF) |

**PLAINTIFF RAPTOR TRADING SYSTEMS, INC. AND DEFENDANTS THEODOROS LARDOS, MARK HINMAN, NELSON IGNACIO, AND ALEJANDRO GIL'S RESPONSE TO MICHAEL WALLACH AND DAVID BETH'S OBJECTIONS TO MAGISTRATE JUDGE FREEMAN'S APRIL 6, 2018 DISCOVERY ORDER**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

THE RELEVANT FACTS ........................................................................................................ 1

ARGUMENT ............................................................................................................................. 5

I. STANDARD OF REVIEW ............................................................................................ 5

II. MAGISTRATE JUDGE FREEMAN'S ORDER IS NOT "CLEARLY ERRONEOUS" OR "CONTRARY TO LAW", BUT RATHER, IT IS COMPREHENSIVE, WELL-CONSIDERED, AND CORRECT ..................................... 6

    A. Attorney Work Product Shared with Counsel for the Potential Purchaser of Raptor ............................................................................................. 7

    B. The Post- March 22, 2016 Attorney-Client Communications ............................... 8

CONCLUSION ........................................................................................................................ 12

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anwar v. Fairfield Greenwich Ltd.*,
   982 F. Supp. 2d 260 (S.D.N.Y. 2013) ...................................................................................6

*Bowne, Inc. v. Ambase Corp.*,
   150 F.R.D.465 (S.D.N.Y. 1993) ............................................................................................8

*CSI Investment Partners II, L.P. v. Cendant Corp.*,
   No. 00-CV-1422, 2006 U.S.LEXIS 9929 (S.D.N.Y. Mar. 12, 2006) ....................................10

*Ferring Pharms. Inc. v. Braintree Labs., Inc.*,
   168 F. Supp. 3d 355 (D. Mass. 2016) ....................................................................................6

*Holmes v. City of New York*,
   2017 U.S. Dist. LEXIS 17855 (S.D.N.Y. Feb. 8, 2017) ..................................................11, 12

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
   No. 12-CV-9350, 2015 U.S. Dist. LEXIS 126663 (S.D.N.Y. Sept. 15, 2015) .......................6

*Macnamara v. City of New York*,
   249 F.R.D. 70 (S.D.N.Y. 2008) .............................................................................................6

*Metzger v. Aetna Ins. Co.*,
   227 N.Y. 411 (1920) ..............................................................................................................4

*Noval Williams Films LLC v. Branca*,
   No. 14-CV-4711, 2016 U.S. Dist. LEXIS 173279 (S.D.N.Y. Dec. 14, 2016) .......................8

*Wu Lin v. Lynch*,
   813 F.3d 122 (2d Cir. 2016) ..................................................................................................6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 72(a) .........................................................................................................1, 5, 10, 11

Wright, Miller & Marcus, *Federal Practice and Procedure: Civil 3d* § 3069 ...............................6

## PRELIMINARY STATEMENT

Raptor Trading Systems Inc. ("Raptor") and Theodoros Lardos ("Lardos"), Mark Hinman ("Hinman"), Nelson Ignacio ("Ignacio"), and Alejandro Gil ("Gil") (collectively, the "Raptor Parties") respectfully submit this Response to Michael Wallach and David Beth's Objections to Magistrate Judge Freeman's April 6, 2018 Discovery Order (the "Objections").[1]

Magistrate Judge Freeman's April 6, 2018 Discovery Order (the "Order") is a non-dispositive order, subject only to review and reversal upon a showing that her order was "clearly erroneous or . . . contrary to law." Fed. R. Civ. P. 72(a). Judge Freeman issued the Order after a full *in camera* review of the documents at issue, in which she ruled not merely on every document but even on the scope of proposed redactions. The Objections filed by Michael Wallach ("Wallach") and David Beth ("Beth") are without merit and clearly are calculated to further extend the already interminable delays that have kept this litigation from the speedy resolution to which the Raptor Parties are entitled. The Raptor Parties respectfully request that the Objections be denied in their entirety, and that they be permitted to file dispositive motions which, the Raptor Parties submit, should end this litigation.

## THE RELEVANT FACTS

On February 17, 2015, Wallach and Beth sold their company, OMEX Systems, Inc. ("OMEX"), to Raptor. The terms of the sale are set forth explicitly in a Purchase Agreement, and the sale included the transfer to Wallach and Beth of all the Class D shares of Raptor. In a Put/Call Agreement annexed to the Purchase Agreement, Raptor was granted the power to call the Class D shares at any time after the sale was consummated by tendering "eight percent (8%) of the gross revenues of Raptor in the year immediately prior to the Call Date." The Purchase

---

[1] For ease of reference, "Raptor Action" refers to *Raptor Trading Systems, Inc. v. Beth, et al.*, No. 16-CV-3430-RA-DCF, and "Wallach-Beth Action" refers to *Wallach, et al., v. Lardos, et al.*, No. 16-CV-5392-RA-DCF. Raptor is the Plaintiff in the Raptor Action. Lardos, Hinman, Ignacio, and Gil are the Defendants in the Wallach-Beth Action.

Agreement and Put-Call Agreement are attached as Exhibit 1 to the Complaint, as amended, that Raptor filed in the Raptor Action. *See* Declaration of Jeffrey E. Glen ("Glen Decl."), Ex. A (Raptor's Second Am. Compl.).

On March 17, 2016, a bit over one year after the purchase, Raptor delivered to Wallach and Beth a Call Notice for the Class D shares, followed shortly thereafter by a subsequent wire transfer of $1,088,608.96, half to each of Wallach's and Beth's personal bank account. The Call Notice is attached Exhibit 2 to Raptor's Complaint. *See* Glen Decl., Ex. A (Raptor's Compl.). On March 22, 2016, Wallach and Beth, through their attorneys, denied that the tender was sufficient, declined to tender the Class D shares, refused to return the wired funds, and demanded that Raptor tender as the call price a total of $4,354,435.84. Wallach and Beth claimed that the Call Price specified in the Put/Call agreement was not the price that the parties had agreed to, and that the price in the Agreement was the product of scrivener's error.

Because the Call Price was precisely what Wallach and Beth had agreed to and what Raptor intended, Raptor commenced the Raptor Action in May 2016, seeking a declaration that the Call was effective and an order to compel Wallach and Beth to deliver the Class D shares to Raptor. The initiation of suit was prompted because Wallach and Beth's refusal to deliver the Class D shares initially caused a delay in the projected closing schedule of the negotiated sale of Raptor to a third-party purchaser. Ultimately, Raptor's inability to deliver the Class D shares was the stated reason for the third-party purchaser to unconditionally withdraw from the otherwise consummated deal. The loss of this corporate opportunity to the owners of Raptor was exacerbated by the filing by Wallach and Beth of the Wallach-Beth Action against the Raptor owners, seeking damages from them for a claimed breach of fiduciary duty in having Raptor exercise its call rights.

2

The basis of Wallach and Beth's defense in the Raptor Action, and of their claim in their action against the Raptor owners and its general counsel, is that the initially proposed Call Price as, arrived at prior to Raptor conducting any due diligence, and as detailed in preliminary and non-binding, negotiable understandings between Raptor and Wallach and Beth, was for a payment of four times the gross revenues of the year in which the call was made.  As Raptor and its owners will demonstrate, when discovery finally ends and they make their dispositive motions, whatever the preliminary agreements of the parties during the sale negotiations may have been at various points in time, concerning the Call price and other material terms and conditions, the only legally relevant fact is that the final transaction documents (including the Purchase Agreement) that Wallach and Beth signed, after they were approved by Wallach and Beth's lawyers, expressed clearly and explicitly the terms of the sale as ultimately offered by Raptor and accepted by Wallach and Beth over the course of the negotiations.  Because those were the terms offered by Raptor and accepted by Wallach and Beth, as reflected in the final executed transaction documents, the validity of which has not been challenged by Wallach and Beth, the owners of Raptor could not as a matter of law breach any duty to Wallach and Beth by having Raptor exercise its contractual right to call the Class D shares.

Despite Raptor's firm belief that the law clearly binds Wallach and Beth to the terms of the agreement they signed, Raptor and its owners elected to provide to Wallach and Beth's litigation counsel all documents executed prior to March 22, 2016 that relate in any way to the negotiations of the merger transaction with OMEX, whether or not they were privileged as attorney-client communications or as attorney work product.  This extensive document production was followed by exhaustive depositions, during which, not incidentally, both Wallach and Beth agreed that they had signed and initialed the Put/Call Agreement, but ***could not agree***

***that they had actually read it***. It is well settled that such "[i]gnorance through negligence or inexcusable trustfulness will not relieve a party from his [or her] contract obligations." *Metzger v. Aetna Ins. Co.*, 227 N.Y. 411, 416 (1920). Yet, Wallach and Beth persisted in seeking even more discovery, in spite of the fact that the Purchase Agreement is final by its terms and explicitly forbids resorting to any prior communication of any kind in order to upset the final and clear terms of the deal.

Finally, last spring, Raptor and its owners balked at providing yet more documents. Arguing that at most there had been a subject matter waiver regarding the Raptor/OMEX merger transaction or the call price, the Raptor parties contended that any privileged communications between the Raptor owners, the Raptor general counsel, and Raptor's outside counsel occurring after the call was made were on the subject matter of the exercise of the call, not the negotiations that preceded the sale or the setting of the call price. Once Wallach and Beth through counsel established that they were arguing that the call price in the Put/Call Agreement was the product of scriveners' error, the "subject matter" of the privileged communication was how to effectuate the call and litigate its effectiveness.

Raptor and its owners also refused to provide privileged work product, created after the two suits that are presently before this Court were commenced, that had been provided to the attorneys for the potential third party purchaser of Raptor.

These two issues were referred by this Court to Judge Freeman. *See* Glen Decl. Ex. B (Endorsed May 5, 2017 Joint Letter); Ex. C (Am. Order of Ref.). As noted in parties' letter briefs to Magistrate Judge Freeman, there are two categories of documents at issue: (1) post-March 22, 2016 attorney-client communications; and (2) work product that was shared with

4

docs-100012898.1

counsel for the potential third-party purchaser of Raptor. The Raptor Parties submitted all these documents to Judge Freeman for *in camera* review on October 18, 2017.

On April 6, 2018, Judge Freeman issued an Order in which she ruled on every document that had been submitted to her. *See* Raptor Action, ECF No. 68; Wallach-Beth Action, ECF No. 62. Her Order covers every document that was submitted to her for review. She specifically required that twenty-six documents be produced in their entirety, and eight additional documents in redacted form; the order actually specifies which lines in the documents may be redacted. Judge Freeman then wrote: "This Court finds that the remaining documents submitted were properly withheld or redacted." Judge Freeman then instructed the Raptor parties "to re-review the remainder of any privilege challenges that have been asserted and, using this Order as a guide, supplement its production as appropriate."

Within two days, the Raptor Parties produced to Wallach and Beth the documents that Judge Freeman had specified, and within two weeks conducted the re-review and supplied a few documents that had been on the privilege log but not supplied to Judge Freeman because they predated the challenge date of March 22, 2016. Despite the comprehensiveness of Judge Freeman's Order, and the total compliance therewith by the Raptor parties, Wallach and Beth have sought to continue to delay getting this case to the merits by claiming that she acted willy-nilly, ordering production or approving withholding "for no apparent reason." Objections at 12. That is a breath-taking accusation of judicial misfeasance, and as explained below, one that is totally unwarranted.

## ARGUMENT

### I. STANDARD OF REVIEW

Rule 72(a) of the Federal Rules of Civil Procedure governs review of non-dispositive decisions by a magistrate judge. In the words of the Rule, such decisions may only be set aside

5

when clearly erroneous or contrary to law and when the district court judge has "the definite and firm conviction that a mistake has been committed." *Wu Lin v. Lynch*, 813 F.3d 122, 126 (2d Cir. 2016) (citations omitted); *Macnamara v. City of New York*, 249 F.R.D. 70, 77 (S.D.N.Y. 2008) (citations omitted). Put another way, a magistrate judge's discovery order should be accepted unless the district court judge has a "strong, unyielding belief that a mistake has been made." *Ferring Pharms. Inc. v. Braintree Labs., Inc.,* 168 F. Supp. 3d 355 (D. Mass. 2016). The standard is that of abuse of discretion; "[t]he magistrate judge's non-dispositive rulings should be afforded substantial deference." *Kaplan v. S.A.C. Capital Advisors, L.P.,* No. 12-CV-9350, 2015 U.S. Dist. LEXIS 126663, at *7 (S.D.N.Y. Sept. 15, 2015).

As one district court judge has explained,

> Magistrate judges are given broad latitude in resolving discovery disputes, *including questions of privilege*. That reasonable minds may differ on the wisdom of granting a party's motion is not sufficient to overturn a magistrate judge's decision. Thus, the party seeking to overturn a magistrate judge's decision . . . carries a heavy burden.

*Anwar v. Fairfield Greenwich Ltd.*, 982 F. Supp. 2d 260, 263 (S.D.N.Y. 2013) (emphasis added) (brackets omitted) (internal quotation marks and citations omitted) (ellipsis in original). Approving the stringent abuse of discretion standard, one pre-eminent treatise states: "it is extremely difficult to justify alteration of the magistrate judge's nondispositive actions by the district judge." Wright, Miller & Marcus, *Federal Practice and Procedure: Civil 3d* § 3069.

II.   **MAGISTRATE JUDGE FREEMAN'S ORDER IS NOT "CLEARLY ERRONEOUS" OR "CONTRARY TO LAW", BUT RATHER, IT IS COMPREHENSIVE, WELL-CONSIDERED, AND CORRECT**

By March of 2017, the parties were well on their way to completing liability discovery in these two actions. At a post-fact discovery conference held March 3, 2017, what stood in the way of the filing of dispositive motions were two open items. The Raptor Parties were

6

concerned with maintaining confidentiality of documents that had been placed in an "electronic portal" that Raptor had set up to enable the prospective third party purchaser of Raptor to conduct due diligence. Wallach and Beth, claiming waiver, wanted access to documents that the Raptor Parties had listed as privileged but which were related to the Raptor-OMEX merger. *See* Glen Decl., Ex. B.

The electronic portal issues were worked out by the parties, other than Wallach and Beth's request that certain communications from litigation counsel to counsel for the prospective purchaser of Raptor, all of which involved attorney work product, be produced. The waiver issue resolved itself into the question: has the voluntary production of documents created during the negotiations that led to the signing of the Raptor-OMEX merger waived privilege on all documents, whenever created, that relate to the litigation over the call price?

These issues were teed up for this Court's possible consideration at a conference scheduled for May 19, 2017, in the joint letter referred to above. The Court, however, elected on May 8, 2017, to refer the two actions to magistrate Judge Freeman "for general pretrial," including "Any discovery issues requiring Court intervention." Glen Decl., Exs. B, C.

### A. Attorney Work Product Shared with Counsel for the Potential Purchaser of Raptor

Wallach and Beth asked Judge Freeman to order production of a small universe of documents from Raptor's counsel to the potential purchaser's attorneys in which Raptor provides updating on the course of the instant litigations, generally in response to questions. Every document that was withheld in this category was the creation of Raptor attorneys.

The parties briefed this issue to Judge Freeman extensively, with Raptor pointing out that an occasional reference to a fact rather than to an opinion or analysis of counsel was both work product as the product of the attorney's selection of relevant facts, and redundant of facts from

7

the Raptor-OMEX merger negotiation period that Wallach and Beth had received in discovery already. *See* Glen Decl., Ex. D, at 4-5 (Sept. 29, 2017 Ltr. Br.); Ex. E (Oct. 11, 2017 Ltr. Br.). Judge Freeman denied the Wallach and Beth request for these documents in its entirety. The arguments put forth by Wallach and Beth in their Objections, with respect, hardly answer the points made in the Raptor's September 2017 letter brief. In particular, there is not even the pretext of a challenge to the well-established law that work product waiver is predicated on a finding that the disclosure to third parties "substantially increases the opportunity for potential adversaries to obtain the information," *Noval Williams Films LLC v. Branca*, No. 14-cv-4711, 2016 U.S. Dist. LEXIS 173279, *7-8 (S.D.N.Y. Dec. 14, 2016) and the cases cited at page 5 of the September 2017 letter brief, and the protection accorded work product submissions to third parties in the pursuit of a business opportunity, *Bowne, Inc. v. Ambase Corp.*, 150 F.R.D.465, 479 (S.D.N.Y. 1993), and the analysis at page 4 of the October 2017 letter brief.

### B.     The Post- March 22, 2016 Attorney-Client Communications

The Raptor Parties argued to Judge Freeman that the subject matter of all privileged communications created after March 22, 2017 was the contemplated litigation, and not the terms of the Raptor-OMEX merger and the determination of the Call Price. The Raptor Parties sought a categorical denial of all post-March 22nd documents. Wallach and Beth sought the opposite: a categorical production of every post-March 22nd document on the Raptor privilege log, although they conceded in a joint status report filed with the Court that they do not seek e-mails and documents concerning Raptor's litigation strategy. Glen Decl., Ex. B (May 5, 2017 Joint Letter). Neither side was successful. Rather, Judge Freeman conducted a document by document *in camera* review, and ordered production of some documents in their entirety, others in part, and others were ruled immune from production.

8

The Raptor Parties, while disagreeing with the denial of their categorical request, recognized that it was in no way "clearly erroneous" and complied immediately. Wallach and Beth refused to acquiesce, and filed the instant Objections.

Wallach and Beth maintain that Judge Freeman's document-by-document consideration and direction is "clearly erroneous and contrary to law". Wallach and Beth come close to alleging that Judge Freeman did not in fact make the *in camera* review that she states took place. Wallach and Beth request that this Court not "merely take the Raptor Parties' word for it that any of the documents concern purely litigation strategy." Objections, at 13. But unless Judge Freeman is being careless with the truth, she reviewed each and every document that the Raptor Parties claimed were prepared regarding the rendition of legal advice and services, and where she disagreed that such documents concerned litigation strategy she ordered them produced. For example, Judge Freeman ruled that Entry No. 77 on the Raptor Parties' privilege log, an email chain ending May 6, 2016, between outside litigation counsel, Jeffrey E. Glen, and Raptor's general counsel, Mr. Gil, should be produced. However, Entry No. 85-1 on the privilege log, another email from Mr. Glen to Mr. Gil, also sent May 6, 2016, was held by Judge Freeman to be "properly withheld." The privilege log describes both documents as "providing legal advice."

Judge Freeman did not "merely take the Raptor Parties' word for it"; she could not have come to contrary conclusions regarding these two documents without having read them. For Wallach and Beth to ask this Court to do its own *in camera* inspection is to suggest that Judge Freeman either did not make the analysis she says she did in her Order, or that she is unable to make the differentiations that she did.

While asking Judge Freeman to ratify a categorical withholding of all post-March 22, 2016 privileged documents, the Raptor Parties also briefed to Judge Freeman their views on the

9

criteria she should use to make a document-by-document evaluation. As the Raptor Parties argued, (Glen Decl., Ex. D, at 2-4 (Sept. 29, 2017 Ltr. Br.); *see also* Glen Decl., Ex. E, at 1-3 (Oct. 11, 2017 Ltr. Br.), where there has been a waiver, its applicability to particular documents and to specific contents within documents is a paper by paper determination. *See* Glen Decl., Ex. E, at 3 (discussing *CSI Investment Partners II, L.P. v. Cendant Corp.*, No. 00-CV-1422, 2006 U.S.LEXIS 9929 (S.D.N.Y. Mar. 12, 2006)). Where, as is the case in many of the documents examined by Judge Freeman, mixed subjects are involved and the availability of information from other already disclosed documents varies, the vehicle for decision is an *in camera* review.[2] And that is precisely what Judge Freeman elected to do.

Some of the documents that Judge Freeman ordered produced can properly be viewed as not containing privileged material at all, waiver or no waiver. For example, privilege log document 65 is an email from Mr. Gil to Mr. Glen, forwarding the March 22, 2016 letter from Wallach and Beth counsel rejecting the call, and asking Mr. Glen to review and then to discuss the letter with him. Whether or not a request to "review" is a protected attorney-client communication is surely subject to divergent views, and Judge Freeman expressed hers by ordering production.

In some cases, what led to Judge Freeman ordering production may well have been the wording of the privilege claim itself. For example, privilege log document 71 conveys an exchange between Raptor owner Hinman and Raptor's accountants regarding certain tax effects of a potential sale of Raptor. The exchange is passed on to the remaining Raptor owners by Mr. Gil. On the privilege log, the document is described as an "E-mail providing legal advice

---

[2] The Raptor parties believe that Judge Freeman's denial of their contention that all post-March 22, 2016 privileged documents are categorically not subject to the limited waiver affecting earlier documents is erroneous. However, her decision is by no means "clearly erroneous," and assuredly no more susceptible of Rule 72(a) reversal than are the aspects of her order that favor Raptor.

10

regarding [the potential third party purchaser]. In retrospect, another description might have been "legal advice to Raptor owners regarding tax effect of sale of the company," and as such it could be considered business advice not subject to the attorney-client privilege. Similarly, the designation as attorney–client privileged to privilege log document 93 seems, upon subsequent review, to convey a business opinion amongst the owners and Mr. Gil regarding the potential third party purchaser's financial strength. It is understandable that upon a Magistrate Judge's review, such a designation was deemed inappropriate, and the document should be produced not because of waiver but because it is not privileged.

The Raptor Parties suggest that the mere examination of the documents ordered produced by Judge Freeman in her Order demonstrate that she was more than careful to consider which documents, created after the categorical cut-off date requested by the Raptor Parties, should be produced and which should not. Counsel is not aware of any decision holding that a magistrate judge charged by a district court judge with resolving discovery disputes owes the parties an opinion elucidating the precise criteria used in making the document-by-document determinations. The Raptor Parties suggest that an appropriate analogy is the universal acceptance by the judiciary that the usual response to a trial objection is "sustained" or "overruled" without further explanation. Judges are presumed to carry out their tasks competently and conscientiously, a presumption enshrined in the review criteria of Rule 72(a).

There is simply no showing that Judge Freeman's handling of the Wallach and Beth challenge to the Raptor Parties' privilege log designations was anything other than exemplary. As Judge Swain wrote recently, "While Plaintiff may disagree with [Magistrate] Judge Ellis' determinations, that disagreement alone does not demonstrate clear error." *Holmes v. City of*

*New York,* 2017 U.S. Dist. LEXIS 17855, *10 (S.D.N.Y. Feb. 8, 2017). The Wallach and Beth Objection and the requests for review contained therein should be denied.

## CONCLUSION

For the foregoing reasons, the Raptor Parties respectfully request that the Court reject Wallach and Beth's Objections to Judge Freeman's Order, accept the findings of Judge Freeman's Order, and grant such other and further relief as the Court deems just and proper.

Dated: May 14, 2018    **ANDERSON KILL P.C.**

By: /s/ Jeffrey E. Glen
Jeffrey E. Glen, Esq.
Raymond A. Mascia Jr., Esq.
Ethan W. Middlebrooks, Esq.
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 278-1000
Facsimile: (212) 278-1733
E-mail: jglen@andersonkill.com
E-mail: rmascia@andersonkill.com
E-mail: emiddlebrooks@andersonkill.com

*Attorneys for Raptor Trading Systems, Inc., and Theodoros Lardos, Mark Hinman, Nelson Ignacio, and Alejandro Gil*