# Exhibit B

Case 1:16-cv-05392-RA-DCF  Document 72-2  Filed 05/14/18  Page 2 of 9
Case 1:16-cv-05392-RA-DCF  Document 43  Filed 05/08/17  Page 1 of 8
Case 1:16-cv-03430-RA  Document 48  Filed 05/05/17  Page 1 of 8

# ANDERSON KILL P.C.

Attorneys and Counselors at Law

1251 AVENUE OF THE AMERICAS ■ NEW YORK, NY 10020
TELEPHONE: 212-278-1000 ■ FAX: 212-278-1733
www.andersonkill.com

Jeffrey E. Glen, Esq.
Jglen@andersonkill.com
212-278-1009

**Via ECF**

May 5, 2017

The Honorable Ronnie Abrams
United States District Court
Southern District of New York
40 Foley Square, Room 2203
New York, NY 10007

MEMO ENDORSED

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED

MAY 08 2017

Re: *Raptor Trading Sys., Inc. v. Beth, et al.*, No. 16-CV-3430 (RA)
    *Wallach, et al., v. Lardos, et al.*, No. 16-CV-5392 (RA)

Dear Judge Abrams:

On March 3, 2017, the parties in the above-referenced actions appeared before the Court for a post-fact discovery conference. Pursuant to Your Honor's request, the parties respectfully submit this joint status update regarding two discovery issues discussed at the conference. Specifically, Your Honor asked the parties to meet and confer concerning the following issues: (1) an electronic portal Raptor set up in 2016 for due diligence in connection with a then-potential third-party purchase of Raptor;[1] and (2) Wallach and Beth's assertion that Raptor waived the attorney-client privilege as to communications concerning the Raptor/OMEX merger, including but not limited to the amount of the call price at which Raptor could buy back Wallach and Beth's shares in Raptor.[2]

Counsel for the parties will be prepared to discuss each other's contentions as set forth in the letter at the upcoming conference, and to brief any issues that the Court may feel require such further submissions. It is Raptor's position that any such briefing should be on an expedited basis.

---

[1] For ease of reference, "Raptor" refers collectively to Raptor Trading Systems, Inc. – the plaintiff in Raptor Trading Systems, Inc. v. Beth, et al., No. 16-CV-3430 (the "Raptor Action") – and Theodoros Lardos, Mark Hinman, Nelson Ignacio, and Alejandro Gil – the defendants in Wallach, et al., v. Lardos, et al., No. 16-CV-5392 (the "Wallach-Beth Action"). "Wallach and Beth" refers collectively to Michael Wallach and David Beth – the defendants in the Raptor Action and the plaintiffs in the Wallach-Beth Action.

[2] At the March 3, 2017 conference, counsel for Wallach and Beth stated that they were waiting for the production of Raptor's 2016 financial statements. Those documents have since been produced.

New York, NY ■ Los Angeles, CA ■ Stamford, CT ■ Washington, DC ■ Newark, NJ ■ Philadelphia, PA

Case 1:16-cv-05392-RA-DCF   Document 72-2   Filed 05/14/18   Page 3 of 9
Case 1:16-cv-05392-RA-DCF   Document 43   Filed 05/08/17   Page 2 of 8
Case 1:16-cv-03430-RA   Document 48   Filed 05/05/17   Page 2 of 8

**Anderson Kill P.C.**

The Honorable Ronnie Abrams
May 5, 2017
Page 2

### 1. The Electronic Portal

At the May 3rd conference, the Court asked Raptor to: (1) determine which, if any, of the documents contained in the secure electronic portal consisted of communications between Raptor and its then-potential third-party purchaser; and (2) identify by Bates number which documents in the portal had been previously produced to Wallach and Beth. Raptor has completed both tasks. Raptor has confirmed that the electronic portal contains one communication between Raptor and the potential third-party purchaser, which is not relevant to these actions. Further, Raptor has produced all documents from the portal that are relevant to Raptor's case and has identified those documents by Bates number.

*The Raptor Position*

Raptor asserts that the documents in the portal that have not been produced contain sensitive proprietary and confidential information unrelated to the issues presented in the current litigations. Those documents principally consist of agreements concerning non-party business entities serviced by Raptor, among other documents. The agreements contain strict confidentiality provisions and Raptor is contractually prohibited from disclosing such agreements or the content of their terms and conditions. Moreover, disclosure of those documents, even with the current Protective Order in place, may cause irreparable harm to Raptor due to the resulting breach of those contracts and the disclosure of price models and other sensitive Raptor and non-party business information to Wallach and Beth – a direct competitor of many of the entities serviced by Raptor. Wallach and Beth have not demonstrated that "disclosure of the confidential information is relevant and necessary" to their defense in the Raptor Action or the prosecution of their claims. *Millenium Health, LLC v. Gerlach*, No. 15-cv-7235, 2015 U.S. Dist. LEXIS 169563, at *6 (S.D.N.Y. Dec. 18, 2015) (citing *Chembio Diagnostic Sys., Inc. v. Saliva Diagnostic Sys., Inc.*, 236 F.R.D. 129, 136 (E.D.N.Y. 2006)).

Further, it is Raptor's position that any discovery of such sensitive, proprietary information by Wallach and Beth would be premature without a determination of whether Raptor's call of Wallach and Beth's shares in Raptor was effective. If the Court determines the call was indeed effective, there would never be any need for Wallach and Beth to perform detailed valuation discovery. Accordingly, Raptor reiterates its objection to the production of these documents on the grounds that they contain sensitive proprietary information, they are not relevant, and any discovery involving them is premature.

*The Wallach and Beth Position*

Wallach's and Beth's position is that the documents in the portal are relevant and should be produced, and that nether Raptor's position on confidentiality or its request for bifurcated discovery are well taken.

Raptor has not met its burden of demonstrating that the documents in question are confidential. *See, e.g., O'Neill v. LVNV Funding, LLC*, No. 14CV7636 ER DF, 2015 WL 4939566, at *1 (S.D.N.Y. Aug. 17, 2015). Rather, Raptor has simply offered an unsubstantiated

Case 1:16-cv-05392-RA-DCF   Document 72-2   Filed 05/14/18   Page 4 of 9
Case 1:16-cv-05392-RA-DCF   Document 43   Filed 05/08/17   Page 3 of 8
Case 1:16-cv-03430-RA   Document 48   Filed 05/05/17   Page 3 of 8

**Anderson Kill P.C.**

The Honorable Ronnie Abrams
May 5, 2017
Page 3

assertion of confidentiality and supposed harm from production, which is insufficient. *See Ahern v. Trans Union LLC Zale Corp.*, No. 301CV02313(DJS), 2002 WL 32114492, at *4 (D. Conn. Oct. 23, 2002) ("Bald assertions of confidentiality, such as a statement by a movant that disclosure could harm the movant's competitive position, are insufficient for a court to enter a protective order."). Indeed, by its own admission, Raptor has already disclosed these so-called confidential documents to the potential third party despite its assertion above that "[t]he agreements contain strict confidentiality provisions and Raptor is contractually prohibited from disclosing such agreements or the content of their terms and conditions."

Raptor's concern about Wallach and Beth being competitors of certain Raptor clients rings hollow considering that Raptor agreed as part of its acquisition of OMEX that Wallach and Beth would be 8% shareholders and representatives to Raptor's board, which would have given Wallach and Beth access to competitive information (except for the fact that, as alleged by Wallach and Beth, Raptor breached its obligations to provide them the information they were entitled to). Nonetheless, to allay any concern, Wallach and Beth would consider an arrangement whereby certain information in the documents in question, such as price terms, is provided on an "attorneys' and experts' eyes only" basis.

Nor does the existence of confidentiality provisions in the agreements in question preclude discovery. As the Court is well aware, documents subject to confidentiality provisions are disclosed all the time in discovery. That is why the parties agreed to the Protective Order approved by the Court. The documents in the portal are responsive to Wallach and Beth's document requests, and Raptor does not argue otherwise.

Contrary to their assertion that Wallach and Beth have not demonstrated a need for the documents in the portal, Raptor itself has conceded that they are relevant for purposes of valuing the company. They are thus necessary for Wallach and Beth to provide to their expert for these purposes. Indeed, that is why the documents were put into the portal in the first place: to assist the potential purchaser in determining the price that should be paid for Raptor.

Given the relevance of the documents, there is no basis for Raptor's contention that their disclosure is "premature" until Raptor has had the opportunity to move for summary judgment on the single issue, in the Raptor Action only, of whether Raptor's exercise of the Call Option at the price Raptor claims is appropriate was proper under the Put/Call Agreement. This argument ignores the claims asserted in Wallach's and Beth's separate action.

Raptor's contention that the discovery will be unnecessary if Raptor is successful on its limited summary judgment motion is incorrect. Raptor has stated that it only intends to move for summary judgment on Wallach's and Beth's counterclaim in the Raptor Action for reformation of the Put/Call Agreement. Raptor will thus not be moving for summary judgment on, *inter alia*, Wallach's and Beth's claims against Lardos, Hinman, Ignacio, and Gil for breach of fiduciary duty and aiding and abetting breach of fiduciary duty. These claims will survive even if the Court determines that Raptor, the company, had the ability to properly exercise the Call Option for the price at which it purported to do so, because it was still a breach of fiduciary duty for majority shareholders Lardos, Hinman, and Ignacio, as individuals, to personally enrich

Case 1:16-cv-05392-RA-DCF   Document 72-2   Filed 05/14/18   Page 5 of 9
Case 1:16-cv-05392-RA-DCF   Document 43   Filed 05/08/17   Page 4 of 8
Case 1:16-cv-03430-RA   Document 48   Filed 05/05/17   Page 4 of 8

**Anderson Kill P.C.**

The Honorable Ronnie Abrams
May 5, 2017
Page 4

themselves at the expense of minority shareholders Wallach and Beth by depriving Wallach and Beth of the larger amounts Wallach and Beth would have received from participating in the sale of Raptor as 8% minority shareholders or simply continuing to be 8% shareholders if Raptor were not sold. It is undisputed from the deposition testimony of the individual Raptor defendants that they caused Raptor to exercise the Call Option solely for their own personal financial gains and not in any way connected to a legitimate business purposes of Raptor.

Moreover, Raptor has not articulated a valid reason for deviating from the standard progression of discovery and motion practice that is reflected in the scheduling orders Raptor has agreed to since the inception of the litigation, including the taking of expert discovery. Raptor has maintained all along that the issue on which it moves for summary judgment is dispositive, yet only now, at the end, does it seek to halt other discovery as a result. The fact that Raptor has decided that it simply does not wish to produce certain documents, however, is not basis to alter the structure of the litigation at the eleventh hour.

Accordingly, Wallach's and Beth's position is that there is no basis for denying or delaying production of documents in the portal.

**2.   Attorney-Client Privilege**

*The Raptor Position*

Raptor asserts that it has rightfully withheld from production e-mail communications and other documents that are protected by the attorney-client privilege. Wallach and Beth contend that because Raptor has produced some documents in and around that same time period (that is, prior to February 17, 2015) involving Raptor General Counsel Alejandro Gil and the various Raptor board members (Nelson Ignacio, Theodoros Lardos, and Mark Hinman), and/or Raptor outside counsel Christopher Tsien -- the same persons on the withheld documents -- then any claim of privilege over those withheld documents has been waived. Raptor disagrees.

Raptor produced documents involving Gil, Lardos, Ignacio, and/or Hinman in that pre-February 17, 2015 time period for two reasons. The first was pursuant to Magistrate Judge Freeman's directive that the parties produce documents to assist in mediation and allow for meaningful discussion towards resolution of the litigation. Raptor never had the understanding that the production of any documents during mediation might result in a waiver of protection of additional documents that were never intended to be produced in this litigation. Thus, Raptor contends that the production of documents at mediation did not result in waiver of the attorney-client privilege, regardless of the fact that those documents have since remained in production.

And second, it is Raptor's position that the communications that Raptor did produce contained mixed business and legal advice, with their primary purpose being business advice. On the other hand, the primary purpose of the withheld communications was legal advice and/or work product. "The party invoking the attorney-client privilege . . . need only show that the provision of legal advice was a 'primary purpose' . . . of the communications as to which the privilege is claimed." *United States ex rel. Ortiz v. Mount Sinai Hosp.*, 185 F. Supp. 3d 383, 390

Case 1:16-cv-05392-RA-DCF Document 72-2 Filed 05/14/18 Page 6 of 9
Case 1:16-cv-05392-RA-DCF Document 43 Filed 05/08/17 Page 5 of 8
Case 1:16-cv-03430-RA Document 48 Filed 05/05/17 Page 5 of 8

**Anderson Kill P.C.**

The Honorable Ronnie Abrams
May 5, 2017
Page 5

(SDNY 2016). Because the primary purpose of the produced documents was business advice, no waiver could have resulted from their production.

*The Wallach and Beth Position*

Wallach and Beth's position is that Raptor's selective disclosure of privileged documents constitutes a subject-matter waiver.

Under Fed. R. Evid. 502(a), a party that produces documents that would have been protected by the attorney-client privilege or the work-product doctrine also waives protection with respect to undisclosed documents if "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together."

Here, Raptor intentionally disclosed multiple privileged communications concerning the negotiation of and drafting of documents for the Raptor/OMEX merger, including those that clearly involve the provision of legal rather than business advice. Because Raptor designated these documents as "confidential" pursuant to the Protective Order, Wallach and Beth will not discuss their contents here, and will provide copies for in camera review at the May 19 conference or as directed by the Court. Moreover, Lardos, Hinman, Ignacio, and Gil openly testified at their depositions concerning attorney-client communications with never an attempt to assert privilege.

Having affirmatively chosen to selectively produce documents on the subject matter, Raptor should not be permitted to shield from discovery other documents concerning the same subject-matter that are likely inimical to its position, thereby depriving Wallach and Beth of a full and fair opportunity to establish their claims and defenses. *See Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 94 (W.D.N.Y. 2011) ("Subject-matter waiver applies where considerations of fairness should allow the 'attacking party to reach all privileged conversations regarding a particular subject once one privileged conversation on that topic has been disclosed' in order to avoid prejudice to the adversary party and 'distortion of the judicial process' that may result from selective disclosure.") (citations omitted) (quoting *In re von Bulow*, 828 F.2d 94, 101-03 (2d Cir. 1987))).

Raptor mischaracterizes Wallach and Beth's position as only relating to documents prior to February 15, 2015, the closing date of the Raptor/OMEX merger. Wallach and Beth believe that the privilege has been waived with regard to all such communications, regardless of their date. This would include, for example, communications concerning the purported exercise of the Call Price in March 2016. Raptor cannot selectively disclose multiple privileged documents and communications and testify without asserting privilege at depositions to support its claims as they relate to the drafting, negotiation, and advice concerning the Raptor/OMEX merger,

Case 1:16-cv-05392-RA-DCF   Document 72-2   Filed 05/14/18   Page 7 of 9
Case 1:16-cv-05392-RA-DCF   Document 43   Filed 05/08/17   Page 6 of 8
Case 1:16-cv-03430-RA   Document 48   Filed 05/05/17   Page 6 of 8

**Anderson Kill P.C.**

The Honorable Ronnie Abrams
May 5, 2017
Page 6

including on the ultimate issue – the Call Price – and then withhold documents on the same subject matter because they may be damaging. This is the classic sword and shield scenario.[3]

Raptor has never suggested, until now, that anything produced in the context of appearing before Magistrate Judge Freeman were subject to under the protections of Fed. R. Evid. 408 or otherwise. Instead, the documents they produced were simply bates numbered and made a part of their overall production. Moreover, Raptor produced most of the documents in question after the mediation, and the Lardos, Hinman, Ignacio, and Gil deposition testimony concerning the attorney-client communication took place after the mediation.

Accordingly, Wallach and Beth maintain that all communications between Gil and Lardos, Hinman, and Ignacio concerning the Raptor/OMEX transaction, including but not limited to those documents concerning the definition of "Call Price," should be produced.

### 3. Raptor's Assertion of Common Interest Privilege

*The Raptor Position*

It is Raptor's position that emails between counsel for Raptor and outside counsel for the then potential third-party purchaser of Raptor are protected from discovery under the common interest privilege.

The common interest privilege applies to "codefendants, coplaintiffs *or persons who reasonably anticipate that they will become colitigants*, because such disclosures are deemed necessary to mount a common claim or defense, at a time when parties are most likely to expect discovery requests and their legal interests are sufficiently aligned that 'the counsel of each [i]s in effect the counsel of all.'" *Ambac Assur. Corp. v. Countrywide Home Loans, Inc.*, 27 N.Y.3d 616, 628 (2016) (quoting *Chahoon v. Commonwealth*, 62 VA. 822, 841-42 (1871) (emphasis added). The New York Court of Appeals has explained that "[w]hen two or more parties . . . reasonably anticipate litigation in which they share a common legal interest, the threat of mandatory disclosure may chill the parties' exchange of privileged information and therefore thwart any desire to coordinate legal strategy. In that situation, the common interest doctrine promotes candor that may otherwise have been inhibited." *Id.* Stated otherwise, the common interest doctrine extends the attorney-client communication privilege to communications with and between a third party who are part of a litigation or reasonably anticipate to become part of litigation as co-parties. It is irrelevant if the parties' relationship began prior to any litigation or reasonable anticipation of litigation. *Cf. Schaeffler v. United States*, 806 F.3d 34, 40-43 (2d Cir. 2015) (finding that although the parties had a prior business relationship, once a tender offer occurred the relationship was altered such that a "common legal interest" arose and protected communications between the two from disclosure).

---

[3] Wallach and Beth do not seek the production of documents concerning Raptor's litigation strategy in these actions.

Case 1:16-cv-05392-RA-DCF   Document 72-2   Filed 05/14/18   Page 8 of 9
Case 1:16-cv-05392-RA-DCF   Document 43   Filed 05/08/17   Page 7 of 8
Case 1:16-cv-03430-RA   Document 48   Filed 05/05/17   Page 7 of 8

**Anderson Kill P.C.**

The Honorable Ronnie Abrams
May 5, 2017
Page 7

Here, Wallach and Beth contested the validity of the Call, which gave rise to these litigations. From that time, there was a reasonable anticipation that the third-party purchaser could become a co-litigant of Raptor's. Thus, it was necessary that Raptor share legal strategy and communicate frankly with the third-party purchaser. It is irrelevant that the parties' relationship may have arisen in the context of a business transaction.

*The Wallach and Beth Position*

The privilege log that Raptor provided after the March 3 conference lists multiple communications between Raptor and its counsel, on the one hand, and the potential purchaser and/or its counsel on the other hand, "concerning Wallach and Beth litigation" and "regarding data room" (*i.e.*, the portal). Raptor asserts that these communications are protected by the attorney-client privilege or work product doctrine, despite their disclosure to third parties, under the common interest doctrine.[4]

Raptor's reliance on the common interest privilege is inapposite. "The common interest rule, like all privileges, is narrowly construed and subject to many exceptions. The burden of establishing that it applies, in all its elements, always rests upon the person asserting it. This showing must be made on a document-by-document basis, and based on competent evidence, usually through the admission of affidavits, deposition testimony or other admissible evidence." *Chevron Corp. v. Donziger*, 296 F.R.D. 168, 203 (S.D.N.Y. 2013) (footnotes and internal quotation marks omitted). Moreover "[t]he burden cannot be met by mere conclusory or ipse dixit assertions in unsworn motion papers authored by attorneys." *In re Hypnotic Taxi LLC*, No. 15-43300 (CEC), 2017 WL 1323413, at *7 (Bankr. E.D.N.Y. Apr. 10, 2017) (internal quotation marks omitted).

Raptor cannot meet its burden here. Indeed, Raptor has identified no purported common interest other than a proposed business transaction, which is insufficient. *See AU New Haven, LLC v. YKK Corp.*, No. 15CV03411GHWSN, 2016 WL 6820383, at *3 (S.D.N.Y. Nov. 18, 2016) ("In order for the doctrine to apply, the shared interest must be legal rather than commercial . . . . Thus, the doctrine does not encompass a joint business strategy which happens to include as one of its elements a concern about litigation, and requires that parties have demonstrated cooperation in developing a common legal strategy.") (citations and internal quotation marks omitted; ellipses in original).

---

[4] "The common interest rule . . . is not a separate privilege but an extension of the attorney client privilege . . . Thus, before a communication can be protected under the common interest rule, the communication must meet the other applicable elements of the attorney-client privilege. *Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 470 (S.D.N.Y. 2003) (citations omitted).

Case 1:16-cv-05392-RA-DCF  Document 72-2  Filed 05/14/18  Page 9 of 9
Case 1:16-cv-05392-RA-DCF  Document 43  Filed 05/08/17  Page 8 of 8
Case 1:16-cv-03430-RA  Document 48  Filed 05/05/17  Page 8 of 8

**Anderson Kill P.C.**

The Honorable Ronnie Abrams
May 5, 2017
Page 8

There is no shared legal, as opposed to commercial, interest between Raptor and the potential purchaser, since Wallach and Beth have never threatened litigation against the potential purchaser.

Moreover, Raptor has provided no factual basis or evidence to support its assertion that the potential purchaser had a "reasonable anticipation" of becoming a co-litigant, and has not identified any legal theory that Raptor or the potential purchaser believe could be asserted by Wallach and Beth against the potential purchaser.

And, since Raptor has represented that the potential transaction has collapsed (because of the litigation Raptor improvidently commenced against Wallach and Beth), there is not even a common commercial or business interest between Raptor and the potential purchaser.

Accordingly, Wallach's and Beth's position is that Raptor must produce all communications between Raptor and its counsel, on the one hand, and the potential purchaser and/or its counsel, on the other.

### 4. Amended Pleadings

The parties are in the process of discussing Wallach and Beth's proposed amended pleadings and will report to the Court as to the status of those discussions prior to the May 19 conference.

Respectfully submitted,

*Jeffrey E. Glen*

Jeffrey E. Glen

cc: Robert A. O'Hare Jr., Esq.
Andrew C. Levitt, Esq.
Raymond A. Mascia Jr. Esq.
Ethan W. Middlebrooks, Esq.

---

By separate order, the Court is referring these actions to Magistrate Judge Freeman for general pretrial. Any discovery issues requiring Court intervention should be addressed to Judge Freeman. The conference scheduled for May 19, 2017 is adjourned *sine die*. SO ORDERED.

Ronnie Abrams, U.S.D.J.
May 8, 2017