# O'Hare Parnagian LLP

20 Vesey Street, Suite 300
New York, NY 10007
(212) 425-1401
Fax: (212) 425-1421
www.ohareparnagian.com

Westchester Office
700 White Plains Road, Suite 255
Scarsdale, NY 10583-5013
(914) 725-3632
Fax: (914) 725-3639

August 24, 2020

**Via ECF**

The Honorable Ronnie Abrams
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

    Re:   *Raptor Trading Systems, Inc. v. Beth, et al.*, No. 16-CV-3430 (RA)
             *Wallach, et al. v. Lardos, et al.*, No. 16-CV-5392 (RA)

Dear Judge Abrams:

       We represent Michael Wallach and David Beth in the above-referenced actions. We write in response to Your Honor's August 21, 2020 Order requesting supplemental letters with respect to actions taken by the board of directors (the "Board") of Raptor Trading Systems, Inc. ("Raptor") without notice to Wallach and Beth.

       As a threshold matter, on summary judgment the only Board action that Wallach and Beth claim is invalid due to lack of notice to Wallach and Beth is the deferment of the first installment under the Promissory Note.  See Defendants Michael Wallach and David Beth's Memorandum of Law in Support of Their Motion for Partial Summary Judgment ("WB Mem.") (ECF no. 105) at 22, 23 n.9; Notice of Motion (ECF no. 104) (seeking summary judgment "on the portions of [the] sixth counterclaim against Raptor [for declaratory relief] relating to the deferral of the first installment payment under the Promissory Note at issue in this action and the acceleration of the Promissory Note").[1]  Nonetheless, Wallach and Beth believe that the Board's purported attempt to "ratify and reissue" the original March 17, 2016 Call Notice and fix a new Call Date of November 11, 2016 (as discussed further below) is an indisputable admission by the Raptor Parties that the previous exercise of the Call Option was improper.  It is thus also an indisputable admission that the May 2016 commencement of Raptor's declaratory judgment action based on the previous exercise of the Call Option – which led to the withdrawal of the offer to purchase Raptor and the associated damages to Wallach and Beth – was meritless and improper.

---

[1] ECF numbers set forth in this letter are from the docket in 16-CV-3430.

O'Hare Parnagian LLP

The Honorable Ronnie Abrams
August 24, 2020
Page 2

**The Board's Decision to Defer First Installment Is Invalid Because the Board
Took Such Action Without Providing Notice of the Meeting to Wallach and Beth**

In response to the first question raised in the August 21 Order, Wallach and Beth are not aware of case law drawing a distinction between notice to voting and non-voting board members. The Raptor Parties, however, have conceded that the Board's actions taken without notice to Wallach and Beth were invalid. As set forth in Wallach and Beth's motion papers, on or about September 21, 2016, the Raptor Parties called a special meeting of the Board and of the stockholders of Raptor seeking, *inter alia*, to "ratify and reissue" the purported Call Notice that the Board had issued almost seven months earlier on March 17, 2016. See W&B Ex. 73 (notice of special meeting). The notice did not set forth any intention to, and the Raptor Parties did not purport to, "ratify" or otherwise deal with the Board's purported deferral of the first installment under the Promissory Note. See WB Mem. at 16-17; Michael Wallach and David Beth's Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("W&B 56.1") (ECF no. 106) ¶¶ 159, 161.

After the meeting, Raptor sent Wallach and Beth a "reissued" Call Notice, dated October 16, 2018, setting forth a November 11, 2016 Call Date. See W&B Ex. 81. According to the "reissued" Call Notice, the Board "unanimously voted at the October 14, 2016 special meeting of the Board of Directors and Stockholders to ratify and reissue the Call Notice dated March 17, 2016." Id. The Raptor Parties thus recognized that they had to "ratify" and "reissue" the Call Notice because the Board had previously issued it without notice to Wallach and Beth, thus rendering the Board's actions null and void. Later, in October 2019 (after the parties filed their respective motions for summary judgment), the Raptor Parties sent Wallach and Beth checks for the directors' fees that Wallach and Beth were owed "for the time period from February 17 through the effective date of the Call, November 11, 2016." W&B Ex. 78 (October 9, 2019 letter from Raptor Parties' counsel); see also W&B Ex. 79 (October `6, 2019 letter from Raptor Parties' counsel). Thus, even after filing their motions for summary judgment, the Raptor Parties conceded that they had needed to ratify Board actions taken at meetings conducted without notice to Wallach and Beth, and thus that the original Call Notice on which their declaratory judgment action is based was not effective.

By contrast, the Raptor Parties have never claimed that they ratified the deferral of the first installment under the Promissory Note, even though they specifically stated that the deferral was an action taken by the Board. See W&B Ex. 57 (March 16, 2016 letter from Alejandro Gil stating that "the Board of Directors of Raptor Trading Systems, Inc. . . . have

O'Hare Parnagian LLP

The Honorable Ronnie Abrams
August 24, 2020
Page 3

decided to defer the first installment payment"). The Raptor Parties do not dispute that Wallach and Beth did not receive notice of any Board meeting at which the deferral was discussed.[2]

Wallach and Beth respectfully submit that there is no basis to treat the requirement of notice to non-voting directors any differently than the requirement of notice to voting directors. The Stockholders & Management Agreement (the "Stockholders Agreement") (W&B Ex. 9) appoints Wallach and Beth as Class D representative to the Board "with the right to attend and participate at all meetings of the Board of Directors in all respects as if they were directors" aside from not being able to vote. Id. § 1(a). The Joint Consent of Directors & Stockholders to Action Taken Without a Meeting, dated February 17, 2015 (the "Joint Consent"), that is annexed to and referred to in the Stockholders Agreement contains the same provision. See Joint Consent § 1.

With regard to this specific provision of the Stockholders Agreement, both Wallach and Beth have stated that "[t]he right to monitor and advise a corporation of which we were becoming 8% stockholders and that owed us $2.14 million was a material component of the deal." Declaration of David Beth (ECF no. 108) ¶ 19; Declaration of Michael Wallach (ECF no. 107) ¶ 42. There is no support in the record to contradict these statements or to suggest that Wallach and Beth waived this right.

Pursuant to the Stockholders Agreement and the Joint Consent, Raptor, Lardos, Hinman, and Ignacio agreed that Wallach and Beth had each and every right possessed by Board members other than the right to vote. Under Raptor's by-laws, this includes the right to receive proper notice of Board meetings. Specifically, the by-laws (a copy of which is annexed as Exhibit A) provide that "[n]otice of special meetings [of the Board] shall be given to each director at least two (2) days before the day on which the meeting is to be held, or shall be sent or delivered to him at such place by telegram, radio or cable, or shall be delivered to him personally or given to him orally not later than the day before the day on which the meeting is to be held." Id. Art. III, § 4(b). The by-laws further provide that special meetings of the Board "shall be held . . . at such time and place as may be specified in the respective notices or waivers of notice thereof." Id. Art. III, § 4(a).[3]

The Raptor Parties were thus obligated to provide Wallach and Beth with notice of Board meetings. It is undisputed that they did not provide them with notice of any Board

---

[2] As set forth in Wallach and Beth's moving papers, the deferral of the first installment is also invalid because Raptor was already in breach of the Promissory Note at the time of the deferral because it had missed the February 17, 2016 deadline for the first installment. See WB Mem. at 23.

[3] The by-laws also provide that directors are entitled to notice whenever the Board "fixes or changes the time or place of any regular meeting." By-Laws Art. III, § 3(c). This essentially means that they are entitled to notice of any regular meeting other than the regular annual Board meeting required to be held immediately after the annual meeting of shareholders. See id. Art. III, §§ 3(a), (b).

O'Hare Parnagian LLP

The Honorable Ronnie Abrams
August 24, 2020
Page 4

meeting at which the deferral of the first installment was discussed. Hence, under well-established law, the deferral is void. See Moore Bus. Forms, Inc. v. Cordant Holdings Corp., 1998 WL 71836, at *7 (Del. Ch. Mar. 5, 1998 ) ("Because the decision to terminate the Strategic Alliance occurred at a board meeting of which Rogers was deliberately not given notice, the actions taken by the Holdings board to terminate the Strategic Alliance were void *ab initio*.") (citing cases); Valerino v. Little, 490 A.2d 756, 759 (Md. Ct. Spec. App. 1985) ("In the absence of proper notice, any action of the Board is invalid unless later ratified. . . ."); In re Seminole Oil & Gas Corp., No. CIV.A. 986, 1958 WL 55434, at *1 (Del. Ch. July 30, 1958) (holding board action to be void where all directors were entitled to notice and complaining director did not receive such notice); Grigsby & Assocs., Inc. v. Rice Derivative Holdings, L.P., No. 00 CIV. 5056 (RO), 2003 WL 22109975, at *2 (S.D.N.Y. Sept. 11, 2003) ("Under Delaware law, when a special board meeting takes place where notice has not been given to a director, the action taken at that meeting is void.") (citing Moore Bus. Forms, Inc.).[4]

The fact that Wallach and Beth did not have the right to vote at Board meetings is irrelevant. In several of the cases cited above, the invalid board actions were taken by a majority of the directors, and the directors who did not receive notice could not have changed the result. See Moore Bus. Forms, Inc., 1998 WL 71836, at *2 (Stockholders Agreement entitled plaintiff to appoint one member to board and disputed actions taken by multiple other board members); In re Seminole Oil & Gas Corp., 1958 WL 55434, at *1 (invalidating action taken by majority of directors at board meeting because one director did not have notice of meeting).

Like Wallach and Beth here, the excluded directors in those cases could not have changed the result, at least not numerically. But the point is not that Wallach and Beth could have changed the outcome if they were able to vote. The point is that Wallach and Beth bargained for the most consequential right in corporate law – to deliberate on corporate action and to monitor, to advise, to persuade, and here, to attempt to make Lardos, Hinman, and Ignacio see the error of their ways before heading irretrievably down the path of destruction on which they ultimately embarked. See Lippman v. Kehoe Stenograph Co., 95 A. 895 (Del. Ch. 1915) ("Each member of a corporate body has the right to consultation with the others and has the right to be heard upon all questions considered, and it is presumed that if the absent members had been present they might have dissented and their arguments might have convinced the majority of the unwisdom of their proposed action, and thus have produced a different result."); OptimisCorp v. Waite, 137 A.3d 970 (Del. 2016) ("[I]t has long been the policy of our law to value the collaboration that comes when the entire board deliberates on corporate action and when all directors are fairly accorded material information."). The Raptor Parties deprived Wallach and Beth of that most consequently right for which they bargained. To allow the Board to take action without notice to Wallach and Beth despite Wallach and Beth's undisputed right to receive

---

[4] Maryland courts "frequently look[] to Delaware courts for guidance on issues of corporate law." Oliveira v. Sugarman, 152 A.3d 728, 736 n.4 (Md. 2017); Fire & Police Retiree Health Care Fund, San Antonio v. Smith, No. CV CCB-18-3670, 2019 WL 6702440, at *5 n.17 (D. Md. Dec. 9, 2019) (same; quoting Oliveira).

O'Hare Parnagian LLP

The Honorable Ronnie Abrams
August 24, 2020
Page 5

notice would render this bargained for "material component of the deal" meaningless. There is no basis in law for such a result.[5]

**Wallach and Beth Never Asked to Be Excluded from**
**Their Bargained-For Positions on Raptor's Board**

Wallach and Beth categorically dispute the notion that they "specifically requested not to be bothered" about Board meetings.

To the contrary, Wallach and Beth wanted and specifically bargained for the right to participate in Board meetings. In their declarations, both Wallach and Beth specifically referred to the provision of the Stockholders Agreement giving them "the right to attend and participate at all meetings of the Board of Directors in all respects as if they were directors" and further stated that the corresponding "right to monitor and advise a corporation of which we were becoming 8% stockholders and that owed us $2.14 million was a material component of the deal" for both of them. Wallach Decl. ¶¶ 41-42 ; Beth Decl. ¶¶ 18-19.

In fact, Gil did not testify that Wallach and Beth did not want to attend Board meetings. Rather, he merely stated that they did not want to be involved in the "day-to-day operations" of Raptor:

> Q. Are you aware that Mr. Wallach and Mr. Beth were, as part of the OMEX/Raptor transaction, appointed as representatives to the Board of Directors without rights to vote?
>
> A. Yes.
>
> Q. And are you also aware that they were entitled to all the information and to participate fully in Board meetings as normal or regular members of the Board of Directors were?
>
> A. Yes. But I should add that they specifically requested not to be bothered.
>
> Q. Who --

---

[5] The Raptor Parties have admitted to holding multiple Board meetings after Wallach and Beth became Class D representatives in February 2015 and have produced purported minutes of those meetings. However, with the exception of the purported October 2016 Board meeting, they did not provide Wallach or Beth with notice of any Board meeting after February 17, 2015 or of any other actions taken by the Board. They also did not provide W&B with any documents, information, and other materials that were provided to other Board members during that time, or any minutes of any Board meetings. See W&B Mem. at 13; W&B 56.1 ¶¶ 92-94.

O'Hare Parnagian LLP

The Honorable Ronnie Abrams
August 24, 2020
Page 6

> A. <u>They didn't want to participate in the day-to-day activities</u> or any -- anything having to do with the operation of Raptor. They did request to be informed from time to time how the company was doing, but they decided they did not want to be bothered and stated as much, both parties did, both gentlemen did.
>
> Q. Were those statements made to you?
>
> A. Yes. Not to me directly, but I recall even in the very first meeting, they indicated that they were not interested in involving themselves in the day-to-day operations of the combined companies.
>
> Q. What very first meeting are you referring to?
>
> A. The first meeting where the deal was being proposed itself.
>
> Q. So this was before the closing of the transaction?
>
> A. Yes, sir.
>
> Q. So you took that to mean back in September and October of 2014, the statements that were purportedly made there should carry forward after the deal had closed?
>
> A. Yes. . . . .[6]
>
> . . .
>
> Q. You testified to a couple of different things here.  <u>Is it your understanding that Mr. Wallach and Mr. Beth did not want to be involved in the day-to-day operations of the company?</u>
>
> A. <u>Yes. That's correct.</u>

Gil Tr. (W&B Ex. 21) at 136-39 (emphasis added).

       The transactions at issue in this action – the exercise of the Call Option, the proposed sale of Raptor, the deferral of the first installment under the Promissory Note – hardly qualify as the "day to day operations" of Raptor.  There is no basis for the Raptor Parties' misleading attempt to portray Wallach and Beth's desire not to be involved with the day-to-day running of Raptor as Wallach and Beth somehow abandoning the very oversight that they

---

[6] The Raptor Parties' reliance on statements made before the closing of the deal that purportedly contradict the terms of the parties' agreement is antithetical to their position with regard to the Call Price.

O'Hare Parnagian LLP

The Honorable Ronnie Abrams
August 24, 2020
Page 7

specifically bargained for and that was a critical part of the deal.  Indeed, Gil conceded that Wallach and Beth wanted certain information about Raptor "because they were 8% shareholders and were interested to know how those shares -- how their shareholder interest was faring."  Id. at 139.

Mark Hinman also confirmed that Wallach and Beth never requested not to receive notice of Board meetings or not to receive Board materials:

> Q. Did Mr. Wallach and Mr. Beth say to you that they did not want to be given notice of board meetings?
>
> A. I am not sure if that was directly stated.
>
> . . .
>
> Q. . . . Did Mr. Wallach and Mr. Beth say to you that they did not want to be provided with board materials and information that was provided to the board of directors at Raptor board meetings?
>
> . . .
>
> Q. It is a yes or no response.
>
> A. No.

Hinman Tr. (W&B Ex. 15) at 90-91.  And while Lardos claimed that W&B did not want to attend quarterly Board meetings, he did not discuss special meetings of the Board, and was unable to testify that W&B did not want to receive notice of Board meetings.  See Lardos Tr. (W&B Ex. 22) at 176-77.[7]

There is thus no basis for the Raptor Parties' position that Wallach and Beth, who had specifically bargained for oversight of Raptor, somehow requested to be kept in the dark about Board meetings discussing (a) existential issues concerning Raptor; (b) issues having a multimillion-dollar impact on the value of Wallach and Beth's Raptor stock; and (c) issues concerning the $2.14 million Promissory Note.

We look forward to discussing these and other issues with the Court at tomorrow's oral argument.

---

[7] Gil's and Lardos's respective testimony is also yet another example of the Raptor Parties not keeping their lies straight – as set forth above, Gil testified that Wallach and Beth did not make their purported statements directly to him, while Lardos testified that those statements were made to Gil.  See Lardos Tr. at 177.

O'Hare Parnagian LLP

The Honorable Ronnie Abrams
August 24, 2020
Page 8

                                                                                                   Respectfully,

                                                                                 *Robert A. O'Hare Jr.*

                                                                                   Robert A. O'Hare Jr.

cc:     Counsel of Record (via ECF)